UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SERGEI CHEPILKO                                    :

                Plaintiff,          :        REPORT AND
                                                            RECOMMENDATION
   -v.-                                         :
                                                            14 Civ. 6732 (GBD) (GWG)
P.O. YEVGENIY BUSHUYEV et al.,           :

             Defendants.          :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Sergei Chepilko, proceeding pro se, brings this action under 42 U.S.C. § 1983 alleging that defendant police officers Yevgeniy Bushuyev, James Farah, David Lamarre, Sung Henry, Marvin Luis, Malik Williams, Yulamnia Gaton, and Johnston, as well as the City of New York, violated his civil rights in a series of interactions between 2010 and 2013.  The defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1]  For the following reasons, the defendants' motion to dismiss should be granted.

I. BACKGROUND

For purposes of deciding the defendants' motion to dismiss, the Court assumes the allegations in Chepilko's amended complaint are true and draws all reasonable inferences in his favor.  See, e.g., Steginsky v. Xcelera Inc., 741 F.3d 365, 368 (2d Cir. 2014).

---

[1] See Notice of Motion to Dismiss the Amended Complaint Pursuant to F.R.C.P. 12(B)(6), dated Mar. 8, 2016 (Docket # 54); Declaration of Alexander Noble in Support of Defendants' Motion to Dismiss the Amended Complaint Pursuant to F.R.C.P. 12(b)(6), dated Mar. 8, 2016 (Docket # 55); Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(B)(6), dated Mar. 8, 2016 (Docket # 56) ("D. Mem."); Affirmation in Opposition to Motion, dated May 24, 2016 (Docket # 64).

Chepilko's amended complaint describes four interactions between himself and the defendants between 2010 and 2013.  See Amended Complaint, dated May 27, 2015 (Docket # 32) ("Amended Complaint"), ¶ III(C).

On May 7, 2010, Chepilko was working as a "phtogrpher [sic] for hire at West 42[nd] Street."  Id.  Defendant Police Officer Johnston "illegally demanded" that Chepilko produce a "license [sic]."  Id.  Johnston then "issued [Chepilko] a summons which was dismissed."  Id.

On August 20, 2011, defendants "Bushuyev, Farah, [and] Lamarre stopped plaintiff walking with the bike, illegally searched plaintiff's bag, threatened to arrest, and issued 2 summonses for 'no helmet' and 'fail[ure] to comply w[ith] posted sign.'"  Id.  Chepilko alleges that this was "clearly in retaliation" for "Plaintiff [having] earlier sued Farah for violation of civil rights."  Id.

On December 14, 2011, defendant Police Officer Gaton "assaulted plaintiff . . . at West 50[th] Str[eet]."  Id.[2]

On November 8, 2013, "Lt. Sung ordered two other police officers to issue to the plaintiff tickets for disorderly conduct after plaintiff complained that police officer was punching clearly mentally disturb[ed] man (P.O. Luis) (P.O. Williams)."  Id.

Chepilko also alleges that "[t]he City of New York failed to train police officers."  Id. ¶ IV.

Chepilko filed his initial complaint on August 19, 2014.  See Complaint, dated Aug. 19, 2014 (Docket # 1).  In accordance with Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997), the district court directed the City of New York to identify certain defendants named in the initial

---

[2] The Amended Complaint also apparently refers to December 4, 2011, as the date when this "event[] . . . occurr[ed]."  Id. ¶ III(B).  This discrepancy does not affect our analysis.

2

complaint.  See Order of Service, dated Sept. 29, 2014 (Docket # 5), at 2-3.  The City complied with this obligation, see, e.g., Letter from Alexander Noble, dated Mar. 12, 2015 (Docket # 26), after which the Court directed Chepilko to file an amended complaint naming the newly identified defendants, see Memorandum Endorsement, dated Mar. 13, 2015 (Docket # 27).  Chepilko did so on May 27, 2015.  See Amended Complaint at 4.

The defendants filed the instant motion to dismiss on March 8, 2016.  See Notice of Motion to Dismiss the Amended Complaint Pursuant to F.R.C.P. 12(B)(6), dated Mar. 8, 2016 (Docket # 54).  Chepilko requested an extension to respond until April 27, 2016, which the Court granted.  See Memorandum Endorsement, dated Apr. 18, 2016 (Docket # 59).  Chepilko then requested an extension until May 11, 2016, which the Court granted.  See Memorandum Endorsement, dated Apr. 29, 2016 (Docket # 61).  Chepilko's third request for an extension, to May 24, 2016, was also granted.  See Memorandum Endorsement, dated May 13, 2016 (Docket # 63).  Chepilko filed an affirmation on May 24, 2016, the substance of which stated in its entirety: "[T]here was no discovery and plaintiff will move to file a Second Amended Complaint."  Affirmation in Opposition to Motion, dated May 24, 2016 (Docket # 64).  In response, the Court issued an Order that stated as follows:

> In an affirmation dated May 24, 2016, plaintiff has stated that he intends to move to file a second amended complaint.  See Docket # 64.  Plaintiff is reminded that his intention to make such a motion has no bearing on the pending motion to dismiss.  Thus, the Court will decide the pending motion to dismiss on the current papers.
>
> The Court will not prevent plaintiff from moving to amend.  There is no right to file such a motion, however, because the time period stated in Rule 15(a)(1)(B) has expired.  The Court therefore directs that any such motion must be filed on or before June 14, 2016.  Given plaintiff's repeated and unsupported requests for extensions in the past, the Court notes that there will be no extension of this deadline absent extraordinary circumstances.  The Court notes further that the setting of this deadline is not intended to affect any argument by defendants that

3

any motion to amend is untimely

Order, dated May 26, 2016 (Docket # 65).  Since the issuance of that Order, plaintiff has filed no

papers.

## II.  APPLICABLE LAW

### A.  Legal Standard Governing a Motion to Dismiss

A party may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where

the opposing party's pleading "fail[s] to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  While a court must accept as true all of the allegations contained in a

complaint, that principle does not apply to legal conclusions.  See Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

(citation, internal quotation marks, and brackets omitted).  In other words, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice,"

Iqbal, 556 U.S. at 678 (citation omitted), and thus a court's first task is to disregard any

conclusory statements in a complaint, id. at 679.

Next, a court must determine if a complaint contains "sufficient factual matter" which, if

accepted as true, states a claim that is "plausible on its face."  Id. at 678 (citation and internal

quotation marks omitted); accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117,

121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the

conclusion that the defendant violated the law, but which actively and plausibly suggest that

conclusion.") (citations omitted).

A claim has facial plausibility when the plaintiff pleads factual content that

4

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

In the case of pro se plaintiffs, "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations and internal quotation marks omitted); accord McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be construed liberally and interpreted "to raise the strongest arguments that they suggest") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, even pro se pleadings "must contain factual allegations that 'raise a right to relief above the speculative level.'" Dawkins v. Gonyea, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting Twombly, 550 U.S. at 555).

B. 42 U.S.C. § 1983

To establish a claim under 42 U.S.C. § 1983, a plaintiff must show that there has been a denial of a right, privilege, or immunity secured by the Constitution or laws of the United States and that the deprivation of such right occurred under color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citing cases). Section 1983 does not in and of itself create any substantive rights; rather, a plaintiff bringing a § 1983 claim must demonstrate a

5

violation of an independent federal constitutional or statutory right.  See Chapman v. Hous.
Welfare Rights Org., 441 U.S. 600, 617-18 (1979).

　　　Plaintiff does not identify the constitutional or other rights on which he relies.  We view
them as potentially falling into a number of areas.  We next review the law governing each of
those areas.

　　　　　1.  False Arrest Claims

　　　A section 1983 false arrest claim "derives from [the] Fourth Amendment right to remain
free from unreasonable seizures, which includes the right to remain free from arrest absent
probable cause."  Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006) (citation omitted).  The
Second Circuit has held that such a claim is "substantially the same as a claim for false arrest
under New York law."  Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999)
(quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).  "To state a claim for false arrest
under New York law, a plaintiff must show that '(1) the defendant intended to confine the
plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to
the confinement, and (4) the confinement was not otherwise privileged.'"  Savino v. City of New
York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir.
1994)).  An arrest is "privileged" if the police have probable cause to make an arrest.  See, e.g.,
Daniels v. City of New York, 2016 WL 4368378, at *3 (S.D.N.Y. Aug. 14, 2016).  "The
existence of probable cause to arrest constitutes justification and 'is a complete defense to an
action for false arrest,' whether that action is brought under state law or under § 1983."  Weyant,
101 F.3d at 852 (quoting Bernard, 25 F.3d at 102) (additional citations omitted).  Under New
York law, a police officer may arrest an individual when the officer has reasonable cause to
believe that the individual has committed a petty offense, including a violation, in his presence

and in his geographical area of employment. See N.Y. Crim. Proc. Law § 140.10(2)(a); see also id. § 1.20(39)

Where a § 1983 plaintiff pleads false arrest, the lack of probable cause must be pleaded in the complaint.  See, e.g., Murchison-Allman v. City of New York, 2016 WL 1322445, at *4 (S.D.N.Y. Mar. 31, 2016) ("In the false arrest context, [plaintiffs must] alleg[e] some plausible factual content as to why the arresting officers' belief that they had committed a crime was not reasonable."); Jackson v. Ramirez, 2016 WL 796854, at *8 (S.D.N.Y. Feb. 22, 2016) (dismissing false arrest claim where it "fails to plausibly allege a lack of probable cause"); Lowery v. City of New York, 2014 WL 2567104, at *4 (S.D.N.Y. June 6, 2014) (dismissing complaint where it offered "absolutely no factual allegations whatsoever from which the Court could infer that [plaintiff's] arrest lacked probable cause or was otherwise without justification").

Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852 (citations omitted); accord Swartz v. Insogna, 704 F.3d 105, 111 (2d Cir. 2013).  The existence of probable cause must be determined based on the totality of the circumstances, see Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989) (citing cases), and evaluated under an "objective standard," United States v. Tramontana, 460 F.2d 464, 466-67 (2d Cir. 1972) (quotation and citation omitted); accord United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 85 (2d Cir. 2002) ("[T]he determination of probable cause is an objective one, to be made without regard to the individual officer's subjective motives or belief as to the existence of probable cause.").

While the standard for false arrest refers to the plaintiff being "confined," some cases

7

have held that a plaintiff may recover under § 1983 for false arrest where an officer merely

issued the plaintiff a non-felony summons and the plaintiff was required to "stay put" while the

officer did so.  See Vasquez v. Pampena, 2009 WL 1373591, at *2-3 (E.D.N.Y. May 18, 2009).

### 2. Unlawful Stop Claims

The Fourth Amendment permits the police to "stop and briefly detain a person for

investigative purposes if the officer has a reasonable suspicion supported by articulable facts that

criminal activity may be afoot, even if the officer lacks probable cause."  United States v.

Sokolow, 490 U.S. 1, 7 (1989) (internal quotation marks omitted) (citing Terry v. Ohio, 392 U.S.

1, 30 (1968)).  Thus, "[a]n investigatory stop is permissible under the Fourth Amendment if

supported by reasonable suspicion."  Ornelas v. United States, 517 U.S. 690, 693 (1996) (citation

omitted).  "The principal components of a determination of reasonable suspicion . . . will be the

events which occurred leading up to the stop . . . and then the decision whether these historical

facts, viewed from the standpoint of an objectively reasonable police officer, amount to

reasonable suspicion . . . ."  Id. at 696.  "Reasonable suspicion" exists where the officer has a

"particularized and objective basis for suspecting the person stopped of criminal activity."  Id. at

696 (citation and internal punctuation omitted).

### 3. Illegal Search Claims

The Fourth Amendment to the United States Constitution protects the "right of the people

to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures."  U.S. Const. amend. IV.  While warrantless searches are per se unreasonable, this rule

is subject to some established exceptions.  United States v. Ross, 456 U.S. 798, 825 (1982)

(citation omitted).  One of these exceptions is a search incident to a lawful arrest.  See Arizona v.

Gant, 556 U.S. 332, 338 (2009).  This exception is supported by two rationales: "(1) the need to

disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." Knowles v. Iowa, 525 U.S. 113, 116 (1998) (collecting cases).

####     4.   Excessive Force Claims

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citation omitted).  "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (per curiam) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)).  "[T]he factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (citing Graham, 490 U.S. at 397). Excessive force claims require greater than de minimis uses of force, "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)).

####     5.   Malicious Prosecution Claims

The Fourth Amendment also protects individuals from criminal prosecution based on the "perversion of proper legal procedures." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 117 (2d Cir. 1995) (quoting Broughton v. State, 37 N.Y.2d 451, 457 (1975)).  A plaintiff must show "some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." Id. (citing Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 309 (1986)).

To prevail on a claim of malicious prosecution, a plaintiff must show four elements: (1) the defendant initiated a prosecution against the plaintiff, (2) the matter terminated in the plaintiff's favor, (3) there was not probable cause to believe the proceeding could succeed, and

(4) the proceeding was begun with malice.  See Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir.

2003); accord O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996).

### 6.  Retaliation Claims

To succeed in a First Amendment retaliation action brought against public officials, a

private citizen must show "(1) he has an interest protected by the First Amendment; (2)

defendants' actions were motivated or substantially caused by his exercise of that right; and (3)

defendants' actions effectively chilled the exercise of his First Amendment right." Curley v.

Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (citation omitted); accord, e.g., Soundview

Assocs. v. Town of Riverhead, 725 F. Supp. 2d 320, 340 (E.D.N.Y. 2010).  The Second Circuit

has held, however, that no First Amendment retaliation claim based on an arrest and/or criminal

prosecution is available where the prosecution at issue was supported by probable cause.

Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992).  As Mozzochi put it: "[a]n

individual does not have a right under the First Amendment to be free from a criminal

prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or

silence criticism of the government." Id. at 1180.  This rule is in accord with case law holding

that a pretextual stop will not invalidate an otherwise lawful search.  See, e.g., United States v.

Scopo, 19 F.3d 777, 784 (2d Cir. 1994); see also Whren v. United States, 517 U.S. 806, 813

(1996) (rejecting argument that "the constitutional reasonableness of traffic stops depends on the

actual motivations of the individual officers involved"); accord Allen v. City of New York, 2007

WL 24796, at *22 (S.D.N.Y. Jan. 3, 2007).  The absence of probable cause must be "pleaded and

proven." Hartman v. Moore, 547 U.S. 250, 265-66 (2006).

## III.  DISCUSSION

Chepilko alleges that his rights were violated in four separate incidents taking place in

10

2010, 2011, and 2013.  See Amended Complaint ¶ III(C).  Chepilko has never explained which rights he contends were violated on each date.  Nonetheless, in light of his pro se status, we construe his complaint as raising the claims we describe below.

A.  The May 7, 2010 Incident

The Amended Complaint states that on May 7, 2010, "P.O. Johnston . . . illegally demanded license [sic] from plaintiff . . . and issued him a summons which was dismissed."  Id.  We interpret this allegation as raising claims for false arrest, unlawful stop, or malicious prosecution.

1.  False Arrest and Unlawful Stop

Defendants argue that any false arrest or unlawful stop claims are barred by the applicable statute of limitations.  D. Mem. at 9-10.  We agree.  The statute of limitations applicable to such claims brought under 42 U.S.C. § 1983 is three years from the date of accrual.  See, e.g., Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013).  A cause of action under § 1983 accrues when the plaintiff "knows or has reason to know of the injury giving rise to the claim."  Milan v. Wertheimer, 808 F.3d 961, 963 (2d Cir. 2015) (per curiam) (quotation and citation omitted).  Here, the accrual date was the date of the arrest or stop.  See Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980);[3] accord, e.g., Brown v. N.Y.C. Hous. Auth., 2015 WL

---

[3] We recognize that one Southern District court held that, notwithstanding the Singleton decision, the date of accrual is the date the adverse criminal action terminates.  See Beberaggi v. N.Y.C. Transit Auth., 1994 WL 75144, at *4 (S.D.N.Y. Mar. 9, 1994).  However, subsequent to Beberaggi, the Supreme Court held that "the statute of limitations upon a § 1983 [false arrest] claim . . . where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."  Wallace v. Kato, 549 U.S. 384, 397 (2007).  Thus, it would appear that Beberaggi's reasoning has been rejected by the Supreme Court, and that Singleton remains good law.  See, e.g., Harrison v. New York, 95 F. Supp. 3d 293, 326-27 (E.D.N.Y. 2015) (relying on Wallace and Singleton to hold that "[a] claim for false arrest generally accrues on the date of the arrest.").

4461558, at *3 (S.D.N.Y. July 20, 2015) (false arrest); Matthews v. City of New York, 889 F.

Supp. 2d 418, 448 (E.D.N.Y. 2012) (unlawful stop).  Because the stop occurred on May 7, 2010,

and Chepilko obviously knew about the stop on that date, the limitations period expired on May

7, 2013.  Chepilko did not bring this action until August 19, 2014.  See Complaint, dated Aug.

19, 2014 (Docket # 1).  Thus, any false arrest or unlawful stop claim is untimely and should be

dismissed.

### 2. Malicious Prosecution

Chepilko alleges that a summons resulted from the May 7, 2010, incident.  See Amended

Complaint ¶ III(C).  His complaint fails to provide any facts relevant to the elements of a

malicious prosecution claim.  He does not allege that his summons was issued without probable

cause or that it was prosecuted with malice.  See Kinzer, 316 F.3d at 143 (to sustain a malicious

prosecution claim under § 1983, a plaintiff must show, inter alia, "that there was no probable

cause for the proceeding; and . . . that the proceeding was instituted with malice") (citations

omitted).  Although he alleges that the summons "was dismissed," Amended Complaint ¶ III(C),

he does not allege the reason that the summons was dismissed, or that the dismissal constitutes a

"terminat[ion] in [his] favor," Kinzer, 316 F.3d at 143.

Chepilko also fails to allege any facts showing "deprivation of liberty."  Singer, 63 F.3d

at 116-17.  The Second Circuit has held that "the issuance of a pre-arraignment, non-felony

summons requiring a later [single] court appearance, without further restrictions, does not

constitute a Fourth Amendment seizure," and thus cannot support a § 1983 action for malicious

prosecution.  Burg v. Gosselin, 591 F.3d 95, 98 (2d Cir. 2010).  While some case law suggests

that multiple court appearances might support such a claim, see Swartz, 704 F.3d at 112, there

are no such allegations here.

12

Thus, any malicious prosecution claim based on the May 7, 2010, incident should be dismissed.

B. August 20, 2011, Incident

The Amended Complaint states that on August 20, 2011, defendants "Bushuyev, Farah, [and] Lamarre stopped plaintiff walking with the bike, illegally searched plaintiff's bag, threatened to arrest, and issued two summonses for 'no helmet' and 'fail[ure] to comply w[ith] posted sign.' – clearly in retaliation because plaintiff earlier sued Farah for violation of civil rights." Amended Complaint ¶ III(C). The defendants interpret this as a claim for unlawful stop, illegal search, and false arrest. D. Mem. at 17-19. We also consider whether Chepilko has stated a claim of retaliation for exercising his First Amendment rights.

1. False Arrest and Unlawful Stop

The complaint gives virtually no information about this stop or arrest. It alleges merely that Chepilko was "walking with the bike" at the time he received the summonses. Amended Complaint ¶ III(C). No other information is provided as to Chepilko's actions. In these circumstances, the complaint fails to show a lack of probable cause for the issuances of the summonses and thus must be dismissed. See Longo v. Ortiz, 2016 WL 5376212, at *5 (S.D.N.Y. Sept. 26, 2016) (dismissing complaint where it "lacks any factual assertions about the events giving rise to the unindicted charges or to support his position that, as to those charges, there was no probable cause"); Dava v. City of New York, 2016 WL 4532203, at *5 (S.D.N.Y. Aug. 29, 2016) (dismissing false arrest claim because "[p]laintiff's conclusory assertions that he was 'falsely arrested,' 'falsely accused,' and innocent of the charges against him are insufficient to plausibly plead the required element that 'the confinement was not otherwise privileged.'"); Murchison-Allman, 2016 WL 1322445, at *4 ("In the false arrest context, [plaintiffs must]

13

alleg[e] some plausible factual content as to why the arresting officers' belief that they had committed a crime was not reasonable."); <u>see</u> <u>also</u> <u>Garcia v. Bloomberg</u>, 2016 WL 5944727, at *2 (2d Cir. Oct. 13, 2016) (summary order) (affirming denial of leave to amend where "[p]laintiffs have not added sufficient allegations in the proposed Third Amended Complaint to show lack of probable cause for the underlying arrests").

### 2. Malicious Prosecution

The Amended Complaint's allegations regarding the August 20, 2011, incident do not state a claim for malicious prosecution for two reasons.  First, as just explained, the complaint does not show lack of probable cause to believe the proceeding could succeed.  <u>See</u> <u>Kinzer</u>, 316 F.3d at 143.  Second, Chepilko does not allege a deprivation of liberty necessary to state a § 1983 malicious prosecution claim for the same reasons discussed with respect to the May 7, 2010, incident.

### 3. Illegal Search

Chepilko asserts that during the stop, the police "illegally searched plaintiff's bag." Amended Complaint ¶ III(C).  Defendants argue that this allegation is insufficiently detailed.  D. Mem. at 17-18.  We agree.  There is no indication of the location of the bag, the circumstances of the search, or the nature of the search.  The complaint asserts only that an "illegal" search occurred, which is the epitome of a conclusory allegation.  A conclusory assertion cannot "substitute for minimally sufficient factual allegations."  <u>Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.</u>, 467 F.3d 283, 289 (2d Cir. 2006) (quotation marks and citation omitted). Thus, the defendants' motion to dismiss should be granted as to this claim.

14

4. Retaliation

As stated above, Chepilko must show three elements to prevail on a First Amendment retaliation claim: "(1) . . . an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley, 268 F.3d at 73 (citation omitted). The defendants argue that Chepilko's failure to "include[] . . . further assertions of fact to render this allegation [of retaliation] plausible" means that any such claim should be dismissed. D. Mem. at 19.

The Second Circuit has held that "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). We conclude that Chepilko's terse description of the alleged retaliation does not meet the elements of a retaliatory action — most obviously because there are no allegations describing how the defendants chilled Chepilko's exercise of his First Amendment rights.[4]

C. December 4, 2011, Incident

The Amended Complaint alleges that "P.O. Gaton assaulted plaintiff" in December 2011 "at West 50[th] str[eet]." Amended Complaint ¶ III(C). There are no other factual allegations regarding this incident. The Amended Complaint does not allege what took place, what force Gaton allegedly used, or even whether Chepilko sustained any injuries. Without such allegations

---

[4] On a separate point, we do not see any claim arising from plaintiff's allegation that the officers "threatened to arrest" him. Amended Complaint ¶ III(C); see Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (verbal statements insufficient to state a claim under § 1983); accord Holland v. City of New York, 2016 WL 3636249, at *10 (S.D.N.Y. June 24, 2016); Hiller v. Farmington Police Dep't, 2015 WL 4619624, at *16 (D. Conn. July 31, 2015).

it is impossible to determine if the force used, if any, was "excessive" or is otherwise actionable. Thus, this claim must be dismissed.[5]

    D.  <u>November 8, 2013, Incident</u>

        The Amended Complaint alleges that, on November 8, 2013, "Lt. Sung ordered two other police officers to issue to the plaintiff tickets for disorderly conduct after plaintiff complained that police officer was punching clearly mentally disturb[ed] man (P.O. Luis) (P.O. Williams)." Amended Complaint ¶ III(C).  This allegation does not state any claim under § 1983.  Chepilko does not allege that he received a summons on November 8, 2013 — only that "Lt. Sung ordered two other police officers to issue . . . tickets for disorderly conduct."  Amended Complaint ¶ III(C).  He also does not allege that he was stopped while the tickets were written. Consequently, the Amended Complaint does not allege the "seizure" necessary for both false arrest and unlawful stop claims.  <u>See</u> <u>generally</u> <u>Jaegly</u>, 439 F.3d at 151 (false arrest); <u>Townes v.</u> <u>City of New York</u>, 176 F.3d 138, 144 (2d Cir. 1999) (unlawful stop).  It also fails to allege any element of a malicious prosecution claim given the lack of explanation of the nature of any ticket and the result.  Accordingly, plaintiff's claims relating to the November 8, 2013, incident should be dismissed.

    E.  <u>Municipal Liability</u>

        Chepilko's Amended Complaint mentions the City of New York only once, claiming that "[t]he City of New York failed to train police officers."  Amended Complaint ¶ IV.  We assume

---

     [5] Because we find that the plaintiff has not alleged a claim for excessive force relating to the December 4, 2011, incident, we do not reach the defendants' argument that any such claim is untimely on the ground that the amendment of the complaint to name P.O. Gaton does not relate back to the filing of the original complaint.  <u>See</u> D. Mem. at 11-13.

this is an attempt to assert a claim pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658

(1978).  Such a claim, however, is only permitted where it is shown that "action pursuant to

official municipal policy of some nature caused a constitutional tort."  <u>Id.</u> at 691.  Here, the

complaint does not link the alleged failure to train police officers to any of his injuries, nor does

it provide any factual allegations to support this claim.  Accordingly, any claim against the City

of New York must be dismissed.  <u>See</u> <u>Neighbour v. Covert</u>, 68 F.3d 1508, 1512 (2d Cir. 1995)

("The mere allegation that the municipality failed to train its employees properly is insufficient

to establish a municipal custom or policy.") (citation omitted); <u>accord</u> <u>Marcano v. City of</u>

<u>Schenectady</u>, 38 F. Supp. 3d 238, 266 (N.D.N.Y. 2014).

V.  <u>CONCLUSION</u>

      For the foregoing reasons, the motion to dismiss the complaint (Docket # 54) should be

granted.   Plaintiff should be given leave to file an amended complaint in the event he is able to

correct the deficiencies by pleading facts that would state a claim against any of the defendants.

<u>See</u> <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual

practice upon granting a motion to dismiss to allow leave to replead.") (citations omitted).

## <u>PROCEDURE FOR FILING OBJECTIONS TO THIS</u><br><u>REPORT AND RECOMMENDATION</u>

      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. George B. Daniels at 500 Pearl Street, New York, New York

10007.  Any request for an extension of time to file objections must be directed to Judge Daniels.

17

If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Knells, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: October 28, 2016
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to

Sergei Chepilko
501 Surf Avenue
Apt. 13A
Brooklyn, NY 11224

Counsel by ECF